IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                                    Case No.:     1:09cr14/WS/GRJ
                                                                     1:12cv72/WS/GRJ

NOEL OWENS

---

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and supporting memorandum of law. (Doc. 163.)  The Government has filed a response (Doc. 168), and Defendant has not filed a reply, despite having been afforded the opportunity to do so.  After a careful review of the record and the arguments presented, the Court concludes that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.  *See* Rules Governing Section 2255 Cases 8(a) and (b).

### PROCEDURAL BACKGROUND[1]

On March 24, 2009, Defendant was charged in four counts of a five count indictment with conspiracy to possess with intent to distribute marijuana within 1000 feet of a school ("Count One"); possession with intent to distribute marijuana within 1000 feet of a school ("Count Two"); possession of firearms and ammunition by a convicted felon ("Count Three") and possession of a firearm and ammunition in

---

[1]Detailed statements of facts describing the offense conduct are set forth in the Presentence Investigation Report (doc. 137) and will be set forth herein only as necessary.

furtherance of a drug trafficking crime ("Count Five").[2]   Defendant was alleged to have been involved in a conspiracy to distribute and possess with intent to distribute marijuana with co-defendant Paul Lyndell Manning and others.  Manning allegedly conducted his distribution activities from Defendant's residence, which is located within 1000 feet of school.  After a two-day trial, a jury convicted him on all counts. (Doc. 89.)

The Presentence Investigation Report ("PSR") was disclosed to the defense on February 25, 2010. (Doc. 113.)   Although Defendant's combined adjusted offense level on Counts One through Three would have been 27, the applicable guidelines range was 360 months to life due to the application of Chapter Four enhancements. (Doc. 137, PSR, ¶ 38, 39, 42.)

At sentencing, the defense offered no objections to the PSR.  Counsel argued that his client had continually maintained that he was not a participant in the conspiracy and that he was being blamed for the actions of others.  Essentially, Defendant claimed that co-defendant Manning unfairly shifted all the responsibility to him and he was not involved.  Counsel asked the court to sentence Defendant within the mandatory minimum provisions, and not "escalating" up to the calculated guidelines range. (Doc. 148 at 3–5.)

Defendant personally addressed the court at sentencing.  He stated that he wanted to "file for insufficient counsel" and even said that counsel had told him prior to trial to file a 2255 motion.  Defendant identified numerous perceived failings to the

---

[2]Co-defendant Paul Lyndel Manning was charged in Count Four with possession of a firearm and ammunition by a convicted felon.

court, including that counsel did not spend enough time on his case, counsel did not talk to Defendant's children, who were at the scene at the time of Defendant's arrest, did not conduct proper cross-examination of witnesses, did not explain what was going on during the trial, and did not prepare adequately for trial in general.  (Doc. 148 at 5–11.)  The court made no comment on Defendant's remarks, and sentenced him to a statutory maximum term of 120 months on Counts One and Two; a concurrent term of 360 months on Count Three, which was the lower end of the applicable guidelines range; and a statutory mandatory consecutive 60 month term of imprisonment on Count Five. (Doc. 148 at 12.)

On appeal, Defendant argued that the evidence was insufficient to support his convictions and that his sentence was unreasonable. (Doc. 162.)  The Eleventh Circuit rejected each of these arguments in turn (*id*.).  Defendant timely filed the instant motion, through counsel, separating his claims into four grounds for relief, some with subparts. The Government opposes the motion in its entirety.

**LEGAL ANALYSIS**

*General Legal Standards*

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8

(11th Cir. 2011).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994).  Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.  Nyhuis, 211 F.3d at 1343 (quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.  Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.  Lynn,

365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998);  McKay v.

United States, 657 F.3d 1190, 1195 (11th Cir. 2011).  An issue is "'available' on direct

appeal when its merits can be reviewed without further factual development."  Lynn,

365 F.3d at 1232 n. 14 (quoting Mills, 36 F.3d at 1055).   Absent a showing that the

ground of error was unavailable on direct appeal, a court may not consider the ground

in a section 2255 motion unless the defendant establishes (1) cause for not raising the

ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that

is, alternatively, that he is "actually innocent."  Lynn, 365 F.3d at 1234; Bousley, 523

U.S. at 622 (citations omitted).  To show cause for procedural default, a defendant must

show that "some objective factor external to the defense prevented [him] or his counsel

from raising his claims on direct appeal and that this factor cannot be fairly attributable

to [defendant's] own conduct."  Lynn, 365 F.3d at 1235.  A meritorious claim of

ineffective assistance of counsel can constitute cause.  See Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct

appeal and are properly raised by a § 2255 motion regardless of whether they could

have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500, 503

(2003); see also United States v. Franklin, 694 F.3d, 1, 8 (11th Cir. 2012).  In order to

prevail on a constitutional claim of ineffective assistance of counsel, a defendant must

demonstrate both that counsel's performance was below an objective and reasonable

professional norm and that he was prejudiced by this inadequacy.  Strickland v.

Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000);

Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013).  In applying Strickland,

the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.  Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; *see also* Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).  Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); *see also* Chandler v. United States, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.  Strickland, 466 U.S. at 689.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."  Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315.  When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."  Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  Strickland, 466 U.S. at 694.  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."  Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010).  A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687).  Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.  Glover v. United States, 531 U.S. 198, 203–04 (2001).  A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."  Id. at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.  Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test.  See Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551,

1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing

Blackledge v. Allison, 431 U.S. 63, 74 (1977)).  And, counsel is not ineffective for failing

to preserve or argue a meritless claim.  Freeman v. Attorney General, Florida, 536 F.3d

1225, 1233 (11th Cir. 2008); see also Lattimore v. United States, 345 F. App'x 506, 508

(11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an

obstruction enhancement); Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002)

(counsel was not ineffective for failing to raise issues clearly lacking in merit); Chandler

v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (counsel not ineffective for failing to object

to "innocuous" statements by prosecutor, or accurate statements by prosecutor about

effect of potential sentence); Meeks v. Moore, 216 F.3d 951, 961 (11th Cir. 2000)

(counsel not ineffective for failing to make meritless motion for change of venue);

Jackson v. Herring, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue

constitutional claims which he reasonably believes to be of questionable merit).

     Finally, the Eleventh Circuit has recognized that given the principles and

presumptions set forth above, "the cases in which habeas petitioners can properly

prevail . . . are few and far between."  Chandler, 218 F.3d at 1313.  This is because the

test is not what the best lawyers would have done or even what most good lawyers

would have done, but rather whether some reasonable lawyer could have acted in the

circumstances as defense counsel acted.  Dingle, 480 F.3d at 1099; Williamson v.

Moore, 221 F.3d 1177, 1180 (11th Cir. 2000).  "Even if counsel's decision appears to

have been unwise in retrospect, the decision will be held to have been ineffective

assistance only if it was 'so patently unreasonable that no competent attorney would

have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See* Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing Drew v. Dep't of Corr., 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004); Tejada, 941 F.2d at 1559; Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. Lynn, 365 F.3d at 1239.

***Ground One***

Defendant first contends that appellate counsel failed to raise properly preserved and meritorious issues involving improper admission of 404(b) evidence.  Defendant's argument appears to be that 404(b) evidence was admitted without notice.

The record reflects that on the first day of trial, defense counsel informed the court that the Government had sent him a notice that it intended to bring similar fact evidence into the case outside the time frame of the conspiracy[3] and that counsel intended to make a 404(b) objection, if appropriate. (Doc. 146 at 8–9.)  Before the lunch break the same day, the court asked the Government to proffer the 404(b) evidence it intended to admit. The Government offered that witness Fiona Bradshaw would testify about drug activities at Defendant's residence going back to 2006, well before the controlled buys that shaped the time frame alleged in the indictment, and that other witnesses would also testify about the existence of drug activity both during the conspiracy and years before.  The Government stated that this evidence was necessary to rebut the defense assertion that only co-defendant Manning was responsible for the drug activities at Defendant's residence because it tended to show both intent and knowledge.  Defense counsel argued that the Government's evidence actually showed only bad character, and that there was no commonality between the way the witnesses would describe Defendant's alleged priors and the conspiracy at issue.  The court sustained the defense objection to testimony occurring prior to 2006, but ruled that it

---

[3]The indictment charged that the conspiracy took place between October of 2008 and February 6, 2009. (Doc. 1.)

would allow testimony about Defendant's activities from 2006 onward.  Defense counsel noted a continuing objection to any evidence that was outside of the charged conspiracy.  (*Id*. at 48–56.)

Defendant now claims that appellate counsel was constitutionally ineffective for his failure to raise on appeal, the alleged admission of key 404(b) evidence without notice.  Due process of law requires that a defendant receive effective assistance of appellate counsel on his direct appeal.  Evitts v. Lucey, 469 U.S. 387, 396 (1985). However, the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue on appeal if counsel, as a matter of professional judgment, decides not to do so.  Smith v. Robbins, 528 U.S. 259, 287–88 (2000); Knowles v. Mirzayance, 556 U.S. 111, 126–127 (2009); Jones v. Barnes, 463 U.S. 745, 751–52 (1983); Heath v. Jones, 941 F.2d 1126, 1130–31 (11th Cir. 1991).   It is possible to bring a Strickland claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate in such a situation that counsel's performance was constitutionally ineffective.  Smith, 528 U.S. at 288.

In this case, although Defendant now argues that an objection to the lack of 404(b) notice was preserved, the record reflects that counsel's objection was not to a lack of notice, but rather to the court's ruling allowing the admission of evidence outside of the time frame of the conspiracy. There was no factual or legal basis for appellate counsel to raise the argument Defendant now suggests, and appellate counsel was not constitutionally ineffective for his failure to raise a claim that was "reasonably considered to be without merit."  United States v. Nyhuis, 211 F.3d 1340, 1344 (11th

Cir. 2000) (citing <u>Alvord v. Wainwright</u>, 725 F.2d 1282, 1291 (11th Cir. 1984); *see also*

<u>Brown v. United States</u>, 720 F.3d 1316, 1335 (11th Cir. 2013);  <u>Pacheco v. Dugger</u>, 850

F.2d 1493, 1495 (11th Cir. 1988).

### *Ground Two*

Defendant contends that trial counsel was constitutionally ineffective because he

made factual and evidentiary stipulations without Defendant's consent. Defendant

claims that he was not consulted regarding the stipulations that the Government read

into evidence on the first day of trial. (*See* Doc. 146 at 27–29.)  He further asserts that

defense counsel's waiver of his right to trial on these issues without Defendant's

approval violated his constitutional rights because absent these stipulations, the

Government could not have proven its case.  Defendant's assertion that he was "not

consulted" regarding these stipulations appears to be premised on the fact that the

copies of the stipulations that are separate docket entries in the court record do not

bear his signature. (*See* Docs. 78, 79.)   The record reflects that before reading the

stipulations to the jury, the Assistant United States Attorney told the jury that the

stipulations were signed by him, by defense counsel, and by the Defendant. (Doc. 146

at 27.)  The Government has produced signed copies of the stipulations as attachments

to its response to the motion to vacate.  Defendant's signature is on each copy.

Defendant's claim that he was not consulted about the stipulation is, therefore, without

merit.

### Ground Three

Defendant raises two separate claims in Ground Three.  First he asserts that trial counsel was constitutionally ineffective because he failed to challenge the competency of a key government witness, Paul Manning.  To the extent Defendant asserts that Manning's competency was unquestioned, from either a legal or lay perspective, he is mistaken.

The Court granted co-defendant Manning's motion for a mental health evaluation in conjunction with the proceedings in this case, and following a competency hearing, accepted Manning's plea of guilty in this case. (Docs. 42, 45, 54.)  Counsel for Defendant Owens then moved for permission to access Manning's mental health records, noting concerns about Manning's ability to observe, recall, and testify to events pertinent to this case. (Doc. 61.)  The Court granted the motion. (Doc. 64.)  Shortly thereafter, the Court granted counsel's oral motion for continuance, which counsel sought in order to investigate more fully the psychiatric history contained in Manning's psychiatric report. (Doc. 71.)  At trial, counsel cross-examined Manning about his diagnosis and the medications he takes.  Manning admitted having been diagnosed with schizo-affective personality disorder, bipolar disorder, and antisocial disorder and taking medications for these conditions as well as using illegal drugs. (Doc. 147 at 27–29.)

Although Manning's credibility was a key focus of the defense closing argument counsel did not specifically focus on Manning's mental health history – only briefly mentioning Manning's admitted nickname of "Crazy Paul" and rhetorically asking

whether Manning may have recalled the facts incorrectly because he suffered from a mental problem. (*Id.* at 74–87.)  In light of the district court's finding of competency after a psychological evaluation, there was no viable basis for counsel to challenge Manning's competency as a witness in this case, and thus counsel was not constitutionally ineffective for not doing so.

Defendant additionally asserts that counsel was ineffective because he failed to challenge the use of racially motivated peremptory strikes in jury selection. According to Defendant had his counsel challenged this in accordance with <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), there would have been a reasonable likelihood of a different outcome either at trial or on appeal.

To determine whether there has been an Equal Protection violation under *Batson*, the court employs a three-part test.  <u>Central Ala. Fair Housing Center, Inc. v. Lowder Realty</u>, 236 F.3d 629, 636 (11th Cir. 2000).  First, the party challenging the peremptory strike must establish prima facie case of discrimination.  *Id.* (citing <u>Batson</u>). To make out a prima facie case, "the defendant must point to more than the bare fact of the removal of certain venire persons and the absence of an obvious valid reason for the removal." *Id.* at 637 (quoting <u>United States v. Allison</u>, 908 F.2d 1531, 1538 (11th Cir. 1990)).  A party advancing a <u>Batson</u> argument ordinarily should "come forward with facts, not just numbers alone." *Id.* (quoting <u>United States v. Bergodere</u>, 40 F.3d 512, 516 (1st Cir. 1994)). "[T]he establishment of a prima facie case is an 'absolute precondition' to the prosecution's burden to articulate race-neutral reasons for the exercise of its strikes."  <u>United States v. Houston</u>, 456 F.3d 1328, 1335–36 (11th Cir.

2006); Lowder Realty Co., 236 F.3d at 636.  If that is done, next, the party making the

peremptory strike is afforded an opportunity to articulate a non-discriminatory

explanation for the strike.  Lowder Realty, 236 F.3d at 636.  Finally, the court must

determine whether the party challenging the strike has met its burden of proving the

existence of purposeful discrimination.  *Id.*

Defendant does not identify a single juror who was stricken in violation of Batson,

but rather makes a generalized assertion.  He has pointed to nothing in the record to

substantiate his claim, stating only that "of the six African American jurors on the venire,

none were empaneled."  The race of the jurors is not reflected on the jury list or on the

individual jury questionnaires. (Doc. 84.)  Notably, the prosecution only challenged five

jurors, and the court itself removed nine.  From the handwritten notes on the court's jury

list and a review of the jury selection transcript, even assuming (likely incorrectly) that

each of the prosecution's five challenges were used against a prospective African-

American juror, there were race neutral reasons for each of the prosecution's

challenges.   Two of the prosecution's challenges were used to remove potential jurors

who knew Defendant, and a third to remove a woman who was "not comfortable finding

someone guilty."  Another was used on a man who had been a victim of a crime and

whose sister had been convicted of DUI.  The last challenge was to a juror who

disclosed in a sidebar conference that she had had a close family member go to prison

for drugs, and whose juror questionnaire was not filled out in its entirety.  (Docs. 84,

159.)  No Batson violation is apparent from the record, and the court cannot find

counsel was constitutionally ineffective for his failure to raise a meritless claim.  *See*

Sneed v. Florida Dep't of Corrections, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless Batson claim not ineffective assistance of counsel).

### *Ground Four*

Defendant also raises two issues as part of Ground Four.  He first asserts that trial counsel affirmatively misadvised him that he was facing a mandatory life sentence, and claims that had he been properly advised about the maximum sentence from the outset, he would have pleaded guilty.  This assertion is entirely lacking in credibility.  At sentencing, trial counsel told the court that Defendant had continually maintained his innocence and denied his involvement in the offense conduct.  Defendant's remarks to the court confirmed this. (*See* Doc. 148 at 3–5.)  Under these circumstances, entering a guilty plea would not have been a viable option.  Therefore, even if counsel did provide erroneous advice about his sentencing exposure, Defendant cannot show prejudice.

Finally, Defendant asserts that trial counsel failed to advise him about his right to testify, and had he been so advised, he would have taken the stand at trial and refuted the allegations against him.  A defense attorney renders ineffective assistance of counsel if he fails to adequately inform his client of the right to testify and that failure prejudices the defense. *See* Lambrix v. Singletary, 72 F.3d 1500, 1508 (11th Cir. 1996) (citing United States v. League, 953 F.2d 1525, 1534 (11th Cir. 1992)).  Even if, as Defendant contends, counsel failed to inform him of his right to testify, the record reflects that he was not unaware of his rights.

On the second day of the trial, out of the presence of the jury, the Government announced its intention to rest.  The court noted its understanding that Defendant had

elected not to testify, and defense counsel affirmed this.  Defendant was placed under

oath and the following exchange took place:

> The Court: Sir, what is your full legal name?

> The Defendant: Noel Tirrell Owens.

> The Court: You've elected not to testify upon the advice of counsel; is that correct?

> The Defendant: Yes, the counsel has advised me not to take the stand.

> The Court: Do you understand that you have the absolute right to testify if you want to?

> The Defendant: Yes, sir.

> The Court: You need to speak up a little bit.

> The Defendant: Yes, sir.

> The Court: You also understand that you have the absolute right not to testify?

> The Defendant: Yes, sir.

> The Court: You also understand that your defense lawyer may give you advice about whether to testify or not testify, but the ultimate decision is yours alone to make, do you understand that?

> The Defendant: Yes, sir.

> The Court: And you've heard the government announce rest.  The next portion of the trial will be to bring the jury in, have the lawyers make closing argument.  I'll read instructions to them on the law, and they'll go out to deliberate.  So I need you to tell me now, is it your decision at this time not to testify?

> The Defendant: Yes, sir.

> The Court: All right, sir.  You may be seated.

(Doc. 147 at 55–56).

Defendant now appears to claim that this colloquy with the court was "misguided by counsel's coercion." (Doc. 163-1 at 9.)  Defendant notes that at sentencing, when Defendant addressed the court he stated "the time that you asked me to take the stand, if you could have known that I couldn't really speak because Mr. Bernstein was standing back over here and I was by myself." (Doc. 148 at 10.)  Defendant offers no evidence or meaningful argument in support of the allegation regarding coercion, particularly in light of the court's detailed inquiry into this issue. *Cf.* Lambrix, 72 F.3d at 1508 (counsel allegedly threatened to withdraw if Defendant testified); Nichols v. Butler, 953 F.2d 1550 (11th Cir. 1992) (same).   Although the court has no insight into counsel's thought process at the time, the court notes that frequently an attorney will advise a client with an extensive criminal history that if he chooses to testify this information will be presented to the jury and could have an adverse impact on his case. In this case, Defendant's PSR reflects prior convictions for numerous drug offenses, as well as domestic battery and aggravated assault. (Doc. 137 (PSR)).  In any event, it is clear that solemn declarations made under oath in open court –  in this case regarding Defendant's understanding of his rights and his decision with respect to that right – carry a strong presumption of verity.  Blackledge v. Allison, 431 U.S. 63, 73–74 (1977); Connolly v. United States, Case No. 13-10774, 2014 WL 2579581 (11th Cir. June 10, 2014) (citing Blackledge); McSwain v. United States, 280 F. App'x 904, 905 (11th Cir. 2008); United States v. Thomas, 488 F. App'x 440 (11th Cir. 2012) (citing United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987)).  Such statements are presumptively trustworthy and are considered conclusive absent compelling evidence

showing otherwise; the subsequent presentation of conclusory and contradictory allegations, such as those presented here, does not suffice.  Blackledge, 431 U.S. at 73–74.  Defendant has not shown that counsel was constitutionally ineffective, or that he is entitled to relief.

## CONCLUSION

For all of the foregoing reasons, the court concludes that Defendant has not shown that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.  Nor has he shown that an evidentiary hearing is warranted.  Therefore, Defendant's motion should be denied in its entirety.

## Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should

issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.  The motion to vacate, set aside, or correct sentence (Doc. 163) should be **DENIED**.

2.  A certificate of appealability should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 21st  day of July, 2014.


*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**